1

2

3              UNITED STATES DISTRICT COURT

4             NORTHERN DISTRICT OF CALIFORNIA

5

6

7    DEBBIE MCINTOSH

8              Plaintiff,                    No. C 12-05589 PJH

9         v.                                 **ORDER GRANTING MOTION TO**
                                             **COMPEL ARBITRATION AND FOR**
10   ADVENTIST HEALTH/WEST ST.               **STAY OF PROCEEDINGS**
     HELENA HOSPITAL, et al.,
11
               Defendants.
12   _____/

13         Defendants Adventist Health and St. Helena Hospital move to compel arbitration and

14   stay this action.  Doc. no. 3.  Plaintiff Debbie McIntosh timely opposed the motion, and

15   defendants filed a reply.  The court determines that the matter is suitable for decision

16   without oral argument and VACATES the motion hearing set for March 13, 2013.  For the

17   reasons set forth below, the motion to compel arbitration and for a stay of these

18   proceedings is GRANTED.

19   **I.      BACKGROUND**

20        **A.     Factual Summary**

21         McIntosh was formerly employed by St. Helena Hospital ("St. Helena"), which is part

22   of Adventist Health.  St. Helena hired McIntosh as an administrative assistant in the clinical

23   laboratory department around October 18, 2004, and she remained employed until at least

24   August 13, 2012.  Compl. ¶ 37.  McIntosh alleges that around November 2009, she started

25   being harassed by coworkers, and around January 2011, she submitted a written grievance

26   to the Human Resources department claiming hostile work environment.  McIntosh also

27   submitted a workers' compensation claim which was denied on or about March 9, 2011.  *Id.*

28   ¶ 9.

1    On March 10, 2011, McIntosh met with the HR manager, who stated there was no

2    evidence to support her hostile work environment allegations.  Around March 16, 2011,

3    McIntosh was transferred from St. Helena to the Coon Joint Replacement Institute as a

4    medical records clerk.  In January 2012, McIntosh complained to HR and her managers

5    about concerns that coworkers were not treating confidential patient information properly,

6    and that she was subjected to physical abuse and harassment.  Compl. ¶¶ 18-20.  In

7    February 2012, McIntosh's supervisor allegedly grabbed McIntosh's arm and left bruises.

8    McIntosh went to the sheriff's station to file assault charges, and met an officer who

9    recommended that McIntosh ask the supervisor to stop the assaults and warn her of

10   possible legal action.  *Id.* ¶¶  24-25.  An officer from the sheriff's office also contacted the

11   supervisor, who denied the alleged assaults.  *Id.* ¶ 26.  Around March 8, 2012, McIntosh

12   was placed on paid administrative leave pending an investigation by HR, which concluded

13   May 2, 2012.  *Id.* ¶¶  27, 31.

14   McIntosh filed a workers' compensation claim in March 2012 and filed a charge with

15   the Equal Employment Opportunity Commission in April 2012.  *Id.* ¶¶ 29, 30.  In July 2012,

16   McIntosh received a notice of right to sue from the EEOC.  *Id.* ¶ 35.

17   McIntosh's employment status was uncertain until August 13, 2012, when the HR

18   manager informed McIntosh that she was considered to be on a leave of absence due to

19   her difficulty "interacting with co-workers in a professional and collaborative manner."

20   Compl. ¶  37.  The HR manager indicated that St. Helena would continue to await the

21   opening of a position suitable for McIntosh.  *Id.*

22       **B.    Procedural History**

23   McIntosh filed this action in Napa County Superior Court on August 31, 2012.

24   Defendants removed the action on October 31, 2012, and filed the instant motion to compel

25   arbitration and for stay of proceedings on November 12, 2012.

26   McIntosh alleges the following claims: retaliation in violation of 42 U.S.C. § 2000e-

27   3(a); violation of Cal. Labor Code § 6310; violation of Cal. Health & Safety Code § 1278.5;

28   and wrongful termination in violation of public policy.

2

United States District Court

For the Northern District of California

1    On October 23, 2012, defense counsel was served with a copy of the complaint;

2  defense counsel emailed McIntosh's attorney to demand that McIntosh dismiss the lawsuit

3  and agree to submit to binding arbitration.  Melton Decl. ¶¶ 3-4.  McIntosh has not agreed

4  to arbitrate.  *Id.* ¶ 6.

5  **II.    LEGAL STANDARD**

6    Section 2 of the Federal Arbitration Act ("FAA") provides that a written arbitration

7  agreement in "a contract evidencing a transaction involving commerce . . . shall be valid,

8  irrevocable, and enforceable."  9 U.S.C. § 2.  Any party bound to an arbitration agreement

9  that falls within the scope of the FAA may bring a motion in federal district court to compel

10  arbitration and dismiss or stay the proceedings.  9 U.S.C. §§ 3, 4.  The FAA eliminates

11  district court discretion and requires the court to compel arbitration of issues covered by the

12  arbitration agreement.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  The

13  role of the federal courts in these circumstances is limited to determining whether the

14  arbitration clause at issue is valid and enforceable under § 2 of the FAA.  *Chiron Corp. v.*

15  *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  That is, the court must

16  determine whether there is an agreement between the parties to arbitrate; the claims at

17  issue fall within the scope of the agreement; and the agreement is valid and enforceable.

18  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

19    An arbitration agreement governed by the FAA is presumed to be valid and

20  enforceable.  *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226–227 (1987).

21  The party resisting arbitration bears the burden of showing that the arbitration agreement is

22  invalid or does not encompass the claims at issue.  *See Green Tree Fin. Corp.-Ala. v.*

23  *Randolph,* 531 U.S. 79, 92 (2000).  Because of the strong federal policy favoring

24  arbitration, doubts or ambiguities must be resolved in favor of and not against arbitration.

25  *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1745 (2011) (citing *Moses H. Cone*

26  *Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)).

27

28

**United States District Court**
For the Northern District of California

1   III.   **DISCUSSION**

2        A.   **Arbitration Agreement**

3        To compel arbitration of McIntosh's claims, defendants must demonstrate the

4   following necessary elements: (1) they have proven the existence of an arbitration

5   agreement with the employee; (2) the agreement contemplates arbitration of the dispute;

6   and (3) the agreement is valid and enforceable. *Lifescan*, 363 F.3d at 1012. With respect

7   to the first element, defendants have demonstrated that McIntosh entered an arbitration

8   agreement.

9        In 2008, Adventist Health updated its employee handbook for California employees,

10  including those at St. Helena Hospital. Fowler Decl. ¶ 5 and Ex. 1. The handbook

11  includes the following arbitration provision:

12       **ARBITRATION PROCEDURE**

13       Arbitrable disputes by an employee are those disputes that are
         made within the applicable statute of limitations and which arose out
14       of or are related to (i) a claim of employment discrimination [ ]; (ii) a
         claim of termination of employment, including claims of constructive
15       discharge; (iii) a claim for wages or other compensation [ ]; (iv) a tort
         claim or any other claim in which punitive damages or emotional
16       distress damages could be awarded that arose out of or is related to
         the employment relationship; (v) a claim that is related in any
17       manner to the claims described in (i) through (iv) of this paragraph.
         Arbitrable disputes by the Company are those claims against an
18       employee that are made within the applicable statute of limitations
         and which arose out of or are related to the employment
19       relationship.

20       Subject to the provisional remedies such as injunctive relief or
         restraining orders, if any, provided for under applicable state or
21       federal law, arbitration shall be final and binding on all parties. . . .

22  Fowler Decl., Ex. 1 at AH000035. The handbook contains an Acknowledgment page for an

23  employee's signature which acknowledges receipt of the employee handbook and agrees

24  to submit to the arbitration procedures contained in the handbook:

25           In the event that I am dissatisfied or disagree with any action
         or failure to act by the hospital or its agents, I agree to submit the
26       matter to the hospital's Grievance and Arbitration Procedures, which
         are contained in the Handbook, for final and binding resolution.

27

28

                                            4

United States District Court
For the Northern District of California

1   Fowler Decl., Ex. 1 at AH000046.  McIntosh signed an acknowledgment form containing

2   the agreement to arbitrate, which she dated September 10, 2008, and which was kept in

3   her personnel file.  *Id.* ¶ 9 and Ex. 2.

4          The FAA reflects the "fundamental principle that arbitration is a matter of contract"

5   and places arbitration agreements "on an equal footing with other contracts,"  requiring

6   courts to enforce them according to their terms.  *Rent-A-Ctr., West, Inc. v. Jackson*, 130 S.

7   Ct. 2772, 2776 (2010).  Like other contracts, arbitration agreements may be invalidated by

8   "generally applicable contract defenses, such as fraud, duress, or unconscionability."  *Id.*

9   (citation and internal quotation marks omitted).  The plain language of the arbitration

10   agreement at issue here evidences an intent to submit employment disputes to binding

11   arbitration.  The acknowledgment form signed by McIntosh expressly refers to the

12   Arbitration Procedures of the employee handbook, and thereby agreed that "arbitration

13   shall be final and binding on all parties."

14          McIntosh challenges the existence of the arbitration agreement on the grounds that

15   it lacks mutual consent, lacks consideration, and is void for vagueness.  These contentions

16   lack merit.  First, McIntosh contends that she did not understand what she was signing

17   because she never received a copy of the 2008 handbook and the arbitration provision was

18   buried towards the end of the handbook and did not sufficiently alert her to the arbitration

19   agreement.  Opp. at 4-5.  This argument that the arbitration provisions were not called to

20   McIntosh's attention also supports her contention that the arbitration agreement is void for

21   vagueness.  The express terms of the acknowledgment form, however, demonstrate that

22   McIntosh expressly agreed to the arbitration provision.  Under California law, "ordinarily one

23   who signs an instrument which on its face is a contract is deemed to assent to all its terms.

24   A party cannot avoid the terms of a contract on the ground that he or she failed to read it

25   before signing."  *Metters v. Ralphs Grocery Co.*, 161 Cal. App. 4th 696, 701 (2008) (citation

26   and internal quotation marks omitted).  Here, McIntosh concedes that she "signed the

27   Acknowledgment."  Opp. at 5.  Because the acknowledgment form "clearly referred to and

28   identified" the Arbitration Procedures contained in the handbook, the court finds that

1   McIntosh entered a binding agreement to arbitrate under California law.  *Spellman v. Sec.,*

2   *Annuities & Ins. Services, Inc.*, 8 Cal. App. 4th 452, 457 (1992) (requiring arbitration of

3   employment discrimination claims where employee signed a uniform application which

4   expressly required arbitration and an employment contract which referred to the

5   "incorporated document wherein the arbitration clause appeared").

6       Second, McIntosh contends that she did not receive consideration for her agreement

7   to arbitrate.  Opp. at 6-7.  Under California law, however, the employer's promise to be

8   bound by the arbitration process serves as adequate consideration.  *Circuit City Stores,*

9   *Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) ("Circuit City's promise to submit to

10   arbitration and to forego the option of a judicial forum for a specified class of claims

11   constitutes sufficient consideration") (citing *Armendariz v. Foundation Health Psychcare*

12   *Services, Inc.*, 24 Cal. 4th 83, 118 (2000)).  Thus, defendants have sufficiently

13   demonstrated the existence of an arbitration agreement between them and McIntosh.

14       **B.    Claims Fall Within Scope of Arbitration Agreement**

15       McIntosh does not dispute that her claims against Adventist Health and St. Helena

16   Hospital arise from her employment and fall within the scope of the Arbitration Provisions of

17   the employee handbook.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218

18   (1985); *E.E.O.C. v. Luce, Forward, Hamilton & Scripps,* 345 F.3d 742, 745 (9th Cir. 2003).

19   Defendants have sufficiently demonstrated the existence of an arbitration agreement that

20   encompasses the dispute.

21       **C.    Enforceability**

22       McIntosh contends that the arbitration agreement is unconscionable and therefore

23   unenforceable.  Under California law, "If the court as a matter of law finds the contract or

24   any clause of the contract to have been unconscionable at the time it was made the court

25   may refuse to enforce the contract . . . ." Cal. Civ. Code § 1670.5(a).

26       In California, "unconscionability has both a procedural and a substantive element,

27   the former focusing on undue oppression or surprise due to unequal bargaining power, the

28   latter on overly-harsh or one-sided results."  *Armendariz*, 24 Cal. 4th at 114 (internal

United States District Court

For the Northern District of California

quotation marks omitted).  *See also Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) ("Unconscionability refers to 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'") (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)).  To invalidate a contract on grounds of unconscionability, both procedural and substantive unconscionability must be present, although not necessarily to the same degree: "the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*  When assessing procedural unconscionability, the court "considers the equilibrium of bargaining power between the parties and the extent to which the contract clearly discloses its terms." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) (citing *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997)).  "A determination of substantive unconscionability, on the other hand, involves whether the terms of the contract are unduly harsh or oppressive." *Id.*

## 1.    Procedural Unconscionability

Procedural unconscionability focuses on the making of the agreement.  Oppression results from unequal bargaining power, when a contracting party has no meaningful choice but to accept contract terms. *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 980 (2010).  A contract or clause is procedurally unconscionable if it is a contract of adhesion. *Adams*, 279 F.3d at 893; *see also Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability.").  A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113 (citation and internal quotation marks omitted).

McIntosh contends that she was not given a meaningful opportunity to negotiate or reject the terms of the arbitration provision.  She alleges that she was given a vague acknowledgment form and was told "everyone signs it," without seeing the employee

handbook.  McIntosh Decl. ¶ 4; Opp. at 10.  Defendants represent that signing the acknowledgment and arbitration consent form is voluntary, not required, and that not all employees elect to do so.  Fowler Decl. ¶ 8.  Defendants do not contend that McIntosh specifically was advised that the acknowledgment form was optional, and the form itself does not state on its face that the employee signed voluntarily, but states only that "the employment relationship is completely voluntary and may be terminated by either party."  Fowler Decl., Ex. 2.  These circumstances, even as alleged by McIntosh, do not demonstrate oppression or coercion, such as being threatened nor bullied into signing the agreement.  However, because McIntosh contends that she did not know that she could refuse to sign the acknowledgment form, she has demonstrated a "minimum degree of procedural unconscionability" due to defendants' stronger bargaining position as the employer and the lack of opportunity to negotiate the terms of the arbitration procedure.  *Dotson*, 181 Cal. App. 4th at 981.

Because McIntosh has shown only a low degree of procedural unconscionability, the court must find a high degree of substantive unconscionability in order to find the agreement unenforceable.  *Dotson*, 181 Cal. App. 4th at 981.

## 2.      Substantive Unconscionability

Substantive unconscionability focuses on the harshness and one-sided nature of the substantive terms of the contract.  *A & M Produce*, 135 Cal. App. 3d at 486-87.  The Ninth Circuit instructs that

> under California law, a contract to arbitrate between an employer and an employee, such as the one we evaluate in this case, raises a rebuttable presumption of substantive unconscionability.  Unless the employer can demonstrate that the effect of a contract to arbitrate is bilateral - as is required under California law - with respect to a particular employee, courts should presume such contracts substantively unconscionable.

*Ingle*, 328 F.3d at 1174.  Whether an arbitration agreement is sufficiently bilateral is determined by examining the actual effects of the challenged provisions.  *Ellis v. McKinnon Broad. Co.*, 18 Cal. App. 4th 1796, 1803-04 (1993).

United States District Court

For the Northern District of California

1  McIntosh contends that the arbitration provision is unilateral because the

2  acknowledgment form states that the handbook "is not a complete manual" and that the

3  policies "may change from time to time." Opp. at 11.  McIntosh argues that the arbitration

4  agreement gives defendants the unilateral power to modify the policies and terms of the

5  handbook without notice to employees.  *Id*.  The court of appeal rejected a similar

6  argument in *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214 (1998).

7  There, the employee argued that the arbitration agreement was lacking in mutuality and

8  was unenforceable because the employer reserved "the right to change any provision in

9  this Handbook at any time for any reason without advance notice" *Id*. at 1213.  The court

10  of appeal held that the employee entered into a valid and enforceable agreement to

11  arbitrate any disputes arising from her employment with Nautilus, reasoning that "Nautilus's

12  discretionary power to modify the terms of the personnel handbook in writing [sic] notice

13  indisputably carries with it the duty to exercise that right fairly and in good faith.  So

14  construed, the modification provision does not render the contract illusory." *Id*. at 1214

15  (citation omitted).  Under California law, defendants' ability to modify the terms of the

16  employee handbook do not render the arbitration agreement illusory or unilateral so as to

17  be unenforceable.

18  Looking to the terms of the arbitration procedures, defendants have demonstrated

19  that the terms are bilateral, and not so one-sided as to be substantively unconscionable.

20  The arbitration procedures provide, in part:

21  **4.**  **Scope of Arbitrator's Authority -** . . . The arbitrator
    shall have the authority to award only such remedies as
22  could be awarded by a court under the applicable
    substantive law, which may include injunctive or other
23  equitable relief. . . .

24  **5.**  **Conducting Discovery -** . . . Discovery may be initiated
    by the parties after the selection of the arbitrator, and
25  may be initiated without first obtaining permission from
    the arbitrator.  In the event of a dispute regarding
26  discovery, either party may ask the arbitrator to
    determine what discovery is appropriate. . . . However,
27  under no circumstances will discovery be permitted that
    is broader than that which is allowed by the applicable
28  procedural rules of the state in which the Company is

9

United States District Court
For the Northern District of California

1

2

located.  The arbitrator may issue subpoenas to compel the testimony of third-party witnesses or the production of documents.

3   *See* Fowler Decl., Ex. 1 at AH000036.  Here, as in *24 Hour Fitness*, the arbitration

4   provision "applies equally to employer and employee; allows both parties substantially the

5   same array of discovery procedures available in civil actions; and does not create an

6   imbalance in remedies potentially available to either side."  *24 Hour Fitness*, 66 Cal. App.

7   4th at 1213.  The *24 Hour Fitness* court contrasted the enforceable agreement against the

8   one found unconscionable in *Stirlen v. Supercuts, Inc.*, where "the unconscionable

9   arbitration clause relegated all employee claims to arbitration while allowing the employer

10  to enforce its rights in court; restricted the discovery available to employees, but not

11  employer; and unilaterally deprived employees, but not employer, of significant statutory

12  and common law remedies.  *Id.* at 1213-14 (citing *Stirlen*, 51 Cal. App. 4th at 1536-1539).

13  Such one-sided terms are not contained in the arbitration agreement here, which

14  defendants have shown is sufficiently bilateral.

15              **3.    *Armendariz* Requirements**

16         McIntosh argues that the arbitration agreement fails to satisfy the substantive

17  requirements set forth in *Armendariz* to enforce an agreement to arbitrate her statutory

18  rights.  In *Armendariz*, the California Supreme Court considered a challenge to an

19  arbitration provision in a case alleging claims under the Fair Employment and Housing Act,

20  California Government Code § 12920, et seq., and ruled that an arbitration agreement

21  cannot be made to serve as a vehicle for the waiver of statutory rights.  *Armendariz*, 24

22  Cal. 4th at 101.  Relying on *Cole v. Burns Intern. Sec. Servs*, 105 F.3d 1465 (D.C. Cir.

23  1997), which based its reasoning on the principles set forth by the United States Supreme

24  Court in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30-33 (1991), the

25  *Armendariz* court set forth five "minimum requirements" for the lawful arbitration of statutory

26  rights pursuant to a mandatory employment arbitration agreement (defined as "an

27  agreement by an employee to arbitrate wrongful termination or employment discrimination

28  claims rather than filing suit in court, which an employer imposes on a prospective or

10

United States District Court

For the Northern District of California

current employee as a condition of employment"). *Armendariz*, 24 Cal. 4th at 90.  The

*Armendariz* court held that such an agreement is lawful if it 1) provides for neutral

arbitrators, 2) provides for more than minimal discovery, 3) requires a written award, 4)

provides for all types of relief that would otherwise be available in court, and 5) does not

require employees to pay either unreasonable costs or any arbitrators' fees or expenses as

a condition of access to the arbitral forum. *Id.* at 102.

McIntosh contends that the arbitration agreement fails to satisfy the first, second and

fifth *Armendariz* factors, but does not dispute that it provides for a written award and relief

that would be available in court.

### a.    Neutral Arbitrators

With respect to the first *Armendariz* factor, McIntosh contends that the arbitration

procedures in the handbook do not expressly state or require that the arbitrator be neutral.

Defendants point out, however, that the handbook provides, "If the parties are unable to

agree on the selection of an arbitrator, either party may petition the local state trial court for

a list of three retired judges to arbitrate the dispute."  Fowler Decl., Ex. 1 at AH000035.

Each party would strike a name from the list provided by the state court, and the remaining

judge would serve as the arbitrator.  *Id.*  Although the handbook does not expressly use the

term "neutral," this procedure does not designate an arbitrator with interests identical to

either party, and ensures the minimum levels of integrity required of a contractually

structured substitute for judicial proceedings. *Armendariz*, 24 Cal. 4th at 103; *Graham v.

Scissor-Tail, Inc.*, 28 Cal. 3d 807, 825 (1981).  This procedure satisfies the neutral

arbitrator requirement.

### b.    Discovery

McIntosh contends that the arbitration procedures do not expressly state how much

discovery will be allowed, only that the "possibly biased arbitrator will make that decision."

Opp. at 12.  Defendants respond that the procedures provide for any discovery that would

be "appropriate under the circumstances," and satisfies the *Armendariz* discovery

requirement.  The discovery provisions of the arbitration procedures at issue here allow the

United States District Court

For the Northern District of California

1    parties to commence discovery "without first obtaining permission from the arbitrator.  In

2    the event of a dispute regarding discovery, either party may ask the arbitrator to determine

3    what discovery is appropriate."  Fowler Decl., Ex. 1 at AH000036.  Further, the arbitrator

4    may "issue subpoenas to compel the testimony of third-party witnesses or the production of

5    documents."  *Id.*  These provisions satisfy the second *Armendariz* factor, which entitles the

6    parties to "discovery sufficient to adequately arbitrate their [ ] claim, including access to

7    essential documents and witnesses, as determined by the arbitrator(s) and subject to

8    limited judicial review pursuant to Code of Civil Procedure section 1286.2," which governs

9    the grounds for vacating an arbitration award.  *Armendariz*, 24 Cal. 4th at 106.

10                                    **c.    Costs**

11          McIntosh also contends that the arbitration procedures do not protect her against

12   unreasonable costs or arbitrator fees, and therefore fails to satisfy *Armendariz*, which held

13   that "when an employer imposes mandatory arbitration as a condition of employment, the

14   arbitration agreement or arbitration process cannot generally require the employee to bear

15   any type of expense that the employee would not be required to bear if he or she were free

16   to bring the action in court."  *Armendariz*, 24 Cal. 4th at 110-11.  Defendants point out,

17   however, that the arbitration procedures state that defendants "shall pay the arbitrator's

18   fee" to the extent required by applicable law.  Fowler Decl., Ex. 1 at AH000036.

19   "Otherwise, the Company and the employee shall split the arbitrator's fee."  *Id.*  Defendants

20   argue that because California law prohibits cost splitting and requires defendants to pay the

21   arbitrator's fees, McIntosh will not be required to pay any unreasonable costs or arbitrator

22   fees.   Reply at 9.

23          Defendants do not cite authority for the proposition that the fee provision is

24   enforceable because it requires the employer to pay the fee to the extent required by law,

25   but otherwise requires the fee to be split.  In *Adams*, 279 F.3d at 894, the Ninth Circuit held

26   that under California law, a cost provision requiring the complaining employee to split

27   arbitration fees with the employer "would render an arbitration agreement unenforceable."

28   Because the arbitration procedures require defendants to pay the full arbitrator's fee, it

United States District Court

For the Northern District of California

1  satisfies the *Armendariz* requirement.  However, to the extent that the alternative fee

2  provision "otherwise" requires the fee to be split between defendants and McIntosh, that

3  provision is unenforceable as a matter of California law.

4        Under California law, courts have discretion to sever an unconscionable provision or

5  refuse to enforce the contract in its entirety.  *Armendariz*, 24 Cal. 4th at 122 (citing Cal. Civ.

6  Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the

7  contract to have been unconscionable at the time it was made the court may refuse to

8  enforce the contract, or it may enforce the remainder of the contract without the

9  unconscionable clause, or it may so limit the application of any unconscionable clause as to

10  avoid any unconscionable result.").  Looking to the various purposes of the contract, the

11  court must determine whether "the central purpose of the contract is tainted with illegality"

12  or whether the illegal provision is "collateral to the main purpose of the contract" and can be

13  severed.  *Id.*

14        Here, the provision requiring McIntosh to split the arbitrator's fee is written as an

15  alternative to the primary fee provision requiring defendants to pay the fee, in contrast to a

16  fee allocation scheme that requires the employee outright "to split the costs of the

17  arbitration, including the daily fees of the arbitrator," *Adams*, 279 F.3d at 891.  This

18  alternative provision, though unenforceable, is easily severable and does not permeate the

19  entire agreement so as to render it "overly harsh" or "one-sided" which would preclude its

20  severance from the arbitration agreement and make the entire agreement unenforceable.

21  *See Armendariz*, 24 Cal. 4th at 114.  *Cf. Ingle*, 328 F.3d at 1180 (finding entire contract

22  unenforceable due to "[t]he adhesive nature of the contract and the provisions with respect

23  to coverage of claims, the statute of limitations, class claims, the filing fee, cost-splitting,

24  remedies, and Circuit City's unilateral power to terminate or modify the agreement").  This

25  cost-splitting provision does not render the entire arbitration agreement unenforceable and

26  is hereby severed from the arbitration agreement pursuant to Cal. Civ. Code § 1670.5(a).

27  *See Cole,* 105 F.3d at 1486 ("[I]n order to uphold the validity of the parties' contract, we

28

United States District Court

For the Northern District of California

1  interpret the arbitration agreement between Cole and Burns as requiring Burns to pay all

2  arbitrators' fees in connection with the resolution of Cole's claims.").

3       McIntosh generally argues that the arbitration agreement has more than one

4  unlawful provision and that the court could not merely sever the unconscionable provisions

5  but would have to reform the entire contract.  Opp. at 12 (citing *Armendariz*, 24 Cal. 4th at

6  124-25).  McIntosh does not demonstrate how any unconscionable provision permeates the

7  entire contract, and a review of the actual provisions of the arbitration agreement shows

8  that only the cost-splitting provision is substantively unconscionable.  After this cost-splitting

9  provision is severed, the arbitration agreement satisfies the *Armendariz* factors and is

10 enforceable.

11       **D.    Waiver**

12       Finally, McIntosh argues that defendants waived their right to compel arbitration by

13 removing the case to federal court, thereby invoking the litigation process.  Opp. at 13-14

14 (citing Cal. Code Civ. Proc. § 1281.2(a)).  Under California law, a court may consider the

15 following factors in determining whether a party has waived its right to arbitrate:

16 "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the

17 litigation machinery has been substantially invoked and the parties were well into

18 preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate;

19 (3) whether a party either requested arbitration enforcement close to the trial date or

20 delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration

21 filed a counterclaim without asking for a stay of the proceedings; (5) whether important

22 intervening steps [e.g., taking advantage of judicial discovery procedures not available in

23 arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the

24 opposing party."  *Sobremonte v. Superior Court (Bank of Am. Nat. Trust & Sav. Ass'n)*, 61

25 Cal. App. 4th 980, 992 (1998) (citation and internal quotation marks omitted).

26       McIntosh argues that defendants removed the current case to federal court for the

27 specific purpose of asking it to rule on state law grounds when the superior court could

28 have decided the arbitration issue in the first place.  Opp. at 14.  Under California law,

United States District Court
For the Northern District of California

1    however, "[a] defendant's removal of a case filed in state court to federal court does not by

2    itself constitute an implicit waiver of the right to compel arbitration."  *Hoover v. Am. Income*

3    *Life Ins. Co.*, 206 Cal. App. 4th 1193, 1204 (2012) (citing *Halim v. Great Gatsby's Auction*

4    *Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008)), *review denied* (Sept. 12, 2012).  Although

5    *Hoover* recognized that a party waives the right to arbitrate by removing a case to federal

6    court when coupled with participation in several months of litigation, defendants' actions

7    here are limited to the removal and motion to compel arbitration.  *See id.* (citing *Cabinetree*

8    *of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390–391 (7th Cir. 1995)).

9    Defendants have not engaged in further litigation that is inconsistent with a desire to

10   arbitrate.

11           To support her argument that defendants' actions are inconsistent with the right to

12   arbitrate and that they have used litigation machinery for their benefit, McIntosh cites cases

13   where the conduct that was found to be inconsistent with arbitration was highly

14   distinguishable from defendants' conduct here.  In *Sobremonte*, the defendant bank waited

15   10 months from service of the complaint to file the motion to compel, and during that time,

16   "the Bank filed two demurrers, one cross-complaint, and one motion to transfer the case to

17   the municipal court.  The Bank also participated in five trial court hearings, including two

18   status conferences, and extensive discovery."  61 Cal. App. 4th at 994.  In *Guess?, Inc. v.*

19   *Superior Court,* 79 Cal. App. 4th 553, 558 (2000), the court found waiver where the

20   defendant moved to compel arbitration only three months after the filing of the claim, but

21   also "fully participated in the discovery process," and sent "two sets of lawyers to the

22   third-party depositions and took full advantage of every opportunity to cross-examine the

23   deponents."  In *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 983 (1997), the

24   court did not make a finding but found a triable issue of fact whether the unreasonable

25   delay and bad faith found in Kaiser's dilatory conduct in choosing arbitrators constituted a

26   form of waiver.

27           Defendants point out that in this case, defense counsel communicated their intention

28   to seek arbitration the same day that the complaint was served, promptly removed the case

1  from state court within eight days of service, and filed the instant motion to compel

2  arbitration within two weeks of removal.  Melton Decl. ¶  2 (defendants were served on

3  October 23, 2012).  Unlike the defendants in *Sobremonte* or *Guess?*, defendants here did

4  not take advantage of the discovery process or inexplicably delay in introducing the

5  question of arbitration.  Viewing the litigation as a whole, defendants have neither taken

6  actions inconsistent with the right to arbitrate, nor substantially invoked the litigation

7  machinery before notifying McIntosh of an intent to arbitrate, to support a finding of waiver.

8        Having found the existence of an enforceable arbitration agreement that

9  contemplates arbitration of the claims in dispute, and in the absence of waiver, the court

10  GRANTS defendants' motion to compel arbitration.

11  **IV.   CONCLUSION**

12        Defendants' motion to compel arbitration under the terms of the arbitration

13  agreement signed by McIntosh on September 10, 2008, is GRANTED.  This action is

14  STAYED pending the completion of arbitration.

15        As there appears no further reason to maintain the file as an open one for statistical

16  purposes and good cause appearing therefor, IT IS ORDERED that the Clerk of the Court

17  shall close this file for administrative purposes and submit a JS-6 form to the Administrative

18  Office.

19        IT IS FURTHER ORDERED that nothing contained herein shall be considered a

20  dismissal or disposition of this action and should further proceedings become necessary or

21  desirable, any party may initiate such proceedings in the same manner as if this order had

22  not been entered.

23        **IT IS SO ORDERED.**

24

25  Dated:  March 12, 2013

26                                                          _____
                                                           PHYLLIS J. HAMILTON
27                                                         United States District Judge

28

United States District Court
For the Northern District of California

16